**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **HSA COMMERCIAL, INC. d/b/a** | ) | FILED: MARCH 28, 2008 |
| **HSA COMMERCIAL REAL ESTATE,** | ) | 08CV1805            EDA |
| an Illinois corporation | ) | |
| | ) | JUDGE LINDBERG |
| **Plaintiff,** | ) | MAGISTRATE JUDGE MASON |
| | ) | |
| **vs.** | ) | Case No. |
| | ) | |
| **STEVEN STEWART AND NEW VISION** | ) | |
| **DEVELOPMENT, CO., LLC a Wisconsin limited** | ) | |
| **liability corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### COMPLAINT FOR INJUNCTION, FRAUD,
### BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

Plaintiff HSA Commercial Inc., doing business under its registered trade name HSA Commercial Real Estate ("HSA"), for its Complaint for Injunction, Fraud, Breach of Fiduciary Duty and Unjust Enrichment against defendants Steven Stewart ("Stewart") and New Vision Development, Co., ("New Vision") states as follows:

1.      HSA is an Illinois corporation with its headquarters and principal place of business in Chicago, Illinois.  HSA is a well known, national, and fully integrated full service commercial real estate firm that develops, manages, and leases commercial real estate and provides financial brokerage and client services in retail, office, healthcare, industrial and mixed use commercial real estate.  Since its formation in 1981, HSA has completed more than 7,500 commercial real estate transactions valued in excess of $2 billion and generated on average in excess of 1,000 real estate transaction each year of its existence.  HSA and its dedicated real estate professionals have won numerous professional awards and designations through its history.

2.      Stewart is a citizen and resident of the state of Wisconsin and holds himself out as a commercial and residential real estate broker and finder of potential commercial and residential properties.

3.      Stewart is the sole member and Chief Executive Officer and President of New Vision which is a Wisconsin limited liability corporation with its principal place of business in Wisconsin and Stewart conducts his business through New Vision.

### JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a). The amount in controversy exceeds the sum or value of $75,000 excessive of interest and costs, and is between citizens of different States as HSA, is an Illinois citizen because it is incorporated in Illinois and has its principal place of business in Illinois, and Stewart and New Vision are citizens of Wisconsin where Stewart is domiciled and resides, and where New Vision is incorporated and has its principal place of business.

5.      This Court has personal jurisdiction over Stewart and New Vision, and venue is proper in this judicial district where HSA resides pursuant to 28 U.S.C. §1332(a) and (c) because defendants are doing business in this district and defendants directed a fraud and breached their fiduciary duties to HSA in this district, and a substantial part of these events or omissions giving rise to HSA's claims occurred in this judicial district.

### NATURE OF ACTION

6.      Stewart and New Vision in July of 2007 solicited HSA's involvement and equity investment in the acquisition and development of a potential mixed use development of a 1.9 acre site in downtown Milwaukee at Sixth and State Street (the "Site"), which Site was controlled by the County of Milwaukee. The County was seeking a request for a proposal for the

- 2 -

acquisition and development of the Site. Stewart and New Vision had neither the capability nor the experience to design, acquire, develop, finance, or market a viable mixed used development, and therefore, asked HSA to lead a development team to acquire and develop the Site and act as "the lead equity partner" and developer of the Site with Stewart and New Vision's role on the development team to be of assistance in negotiations with the County and City of Milwaukee and in securing the necessary governmental approvals until HSA was awarded the option to acquire the Site. In fact, Stewart and New Vision were incapable of putting any equity in the transaction so that HSA was to be the only equity participant. While Stewart and New Vision had no economic or realistic plans for the Site, HSA found the Site attractive, if properly and effectively designed with the appropriate blend of mixed uses, that would attract interest from nearby Milwaukee Area Technical College ("MATC"). Thus, HSA agreed with Stewart's request to form and lead the development team. When the team's request for proposal was accepted by the County, on the strength of HSA's experience and capabilities, HSA then expended much time and expense in devising a viable mixed use development and in negotiating with MATC for its use of part of the Site, securing other potential tenants, causing an experienced parking garage operator to join the team, paying for the architectural services for the architect member of the team, and making a successful presentation to the County. Stewart did little or nothing for the development team during this process except that he had associated himself and New Vision with John Bowles, an individual with experience in local government who assisted HSA in facilitating presentations with the County. At some point early in the creation of the development team, Stewart conceived a scheme to defraud HSA by which he and New Vision would induce HSA to join and lead the team, and provide credibility, funds, and a commercially viable mixed use design for the Site based on HSA's expertise, contacts, and skills, and then

- 3 -

deceptively seize the benefit of HSA's work for themselves. In breach of Stewart and New Vision's fiduciary duties to the team and to HSA, after HSA began its work in furtherance of the team's objectives, Stewart began making increasingly unreasonable demands for compensation for finding the Site and demanding an extortionate amount for a continuing participation in the development when Stewart always knew and agreed that he and New Vision were to have no, or a very limited, role in the development after acquisition because they were not putting in any equity, unlike HSA. Rejecting HSA's generous offers of compensation far beyond what Stewart and New Vision's participation in the development warranted, or what would be customary in the industry, Stewart and New Vision's misappropriated HSA's confidential and proprietary information and work, and without notice to HSA, seized the option for the Site in New Vision's name and is now marketing the project to other developers to reap the benefit of HSA's work and expertise.

**FACTS COMMON TO ALL COUNTS**

7.      Prior to July of 2007, Stewart had on prior occasions contacted HSA in Chicago, and holding himself out as a broker seeking a finder's or acquisition fee, had presented commercial real estate opportunities that he tried to interest HSA in pursuing, but HSA had not pursued any such opportunities.

8.      In July of 2007, Stewart contacted HSA in Chicago to present the opportunity of potential acquisition and development of the Site. Stewart and New Vision had no ability to acquire and develop the Site and no specific viable concepts about how the Site could be packaged as a mixed use development attractive to the County and potential tenants.

9.      Indeed, by August of 2007, Stewart and New Vision through Bowles provided to HSA in Chicago the only information they had about the Site, which was very stale information

- 4 -

Stewart or Bowles had used three years earlier in a failed request for proposal to the County for the Site, and the only idea they had for the Site was a bad one – increasing the parking in the potential development.

10.    Despite Stewart  and New Vision's lack of any viable plan for the Site, HSA, upon further exploration, believed that given HSA's experience and contacts that the Site could be developed successfully as a mixed use development and agreed with Stewart and New Vision's request to become the lead member of the development team to put together a viable and attractive development package and upon approval to proceed to acquire the Site, arrange for equity investment and financing and develop the Site.

11.    HSA brought into the team the world's largest parking garage operator, an architect and legal counsel, and authorized Stewart and New Vision to submit a request for a proposal to the County of Milwaukee detailing HSA's lead role on the team and emphasizing HSA's extensive commercial real estate development experience and successes.  The request was submitted in approximately late August of 2007 and was accepted by the County, according to Bowles, because no other developer responded to the request for proposal since "our team was too strong to compete against."

12.    In the response to the request for proposal from the County, Stewart described to the County that New Vision's role would be in assembling the team and representing the team in receiving City approvals until the option for the Site was acquired.  Stewart described HSA's role on the team as the "lead equity partner and financial manager".  In fact, consistent with this representation, it was always agreed by HSA and Stewart and New Vision that HSA, consistent with its expertise and the fact that Stewart and New Vision were not capable of putting any equity into the proposed development, would create the development plan for the Site and if

successful acquire the Site in its name and arrange for equity investment by its principals and others and obtain financing and then develop the Site. Stewart, New Vision and Bowles would assist in securing governmental approvals, scheduling meetings with County officials and participating in locating and negotiating with potential users/tenants of the development that HSA would create. These roles were agreed to before, and at a meeting at HSA's office in Chicago, on October 4, 2007, attended by Stewart and Bowles.

13.    Having committed to being members of the development team and holding themselves out to the County of Milwaukee as members of the team dedicated to acquiring and developing the Site in accordance with their defined roles, the members of the team owed each other fiduciary duties of honesty, loyalty, fairness and full disclosure.

14.    By the time of the meeting in HSA's office on October 4, 2007, it was apparent to HSA that Stewart and New Vision did not have a viable or realistic handle on the potential components of the mixed used development and had not considered potential dormitory room uses by MATC and had grossly inflated the parking component of the project. As a result, HSA scheduled a meeting with MATC to determine MATC's needs and interest in the project. Stewart failed to show up at the meeting or at several other meetings held in October where HSA met with MATC and other potential users for the Site and met with other members of the team to review parking projections and architectural renderings. During this time period, while Bowles was helpful in arranging meetings and securing information requested by HSA, Stewart and New Vision's only contribution to the team was obtaining the interest of a potential tavern tenant, and a high-end luxury sandwich restaurant which given the potential classroom/dorm component of the development under consideration were ill-conceived uses.

- 6 -

15.    In November of 2007, pursuant to HSA's agreement with Stewart and New Vision that HSA would acquire and develop the Site, HSA became financially responsible for the fees of the architects and attorneys for the team with Stewart and New Vision's knowledge and acquiescence.

16.    At least by this time, Stewart and New Vision, seeing the progress being made by HSA in assembling a viable mixed use development project for the Site and knowing that HSA alone would develop the Site after acquisition and that HSA was expending funds for the architect and attorneys, decided not to disclose to HSA their plan to demand extortionate fees for their minimal participation in the team and their scheme to misappropriate the Site and HSA's development work if these demands were not met, but to let HSA continue to work to put together a viable development that Stewart and New Vision could later attempt to misappropriate.

17.    Pursuant to HSA's and Stewart's and New Vision's agreement, on or about November 17, 2007, HSA, through Daniel Miranda and John Mangel, and Stewart and Bowles, met with the President of MATC and other MATC executives to discuss MATC needs, interest, and potential uses of the development for the Site.  During the meeting, HSA described that HSA given its size and expertise and equity investment would be leading the development and acquiring the Site in its own name.  Pursuant to their scheme and in order to allow it to come to fruition, Stewart, during and after this meeting, did not object or disagree with this description of HSA's role provided to the executives of MATC in breach of his and New Vision's duties of full disclosure and honesty.

18.    As a result of this meeting, MATC expressed an interest in working with HSA about locating MATC classrooms, and dormitory rooms in the development for the Site.  As a

result, HSA, with the architect that HSA was paying, worked quickly to design uses suitable for MATC's particular needs and obtain requested information from the County for a meeting scheduled in need of December of 2007. Bowles assisted in this work, but Stewart did nothing during this period to move the development forward.

19.    Just before a scheduled meeting on December 19, 2007 with the Economic Development Committee of the County to discuss the proposed development for the Site being created by HSA, HSA made a very generous proposal to compensate Stewart, New Vision and Bowles for their participation in the team providing for a 4% acquisition fee, a leasing fee for MATC's space for the life of the lease, a consulting fee for ongoing zoning efforts by them, and an owner representation fee once HSA entered into a contract to acquire the Site in the event HSA decided to retain Stewart and Bowles during the development process. The compensation offered by HSA was far beyond what was customary in the industry for the minimal contributions to the team made by Stewart and New Vision and their lack of equity participation.

20.    Pursuant to Stewart's scheme, and in breach of his fiduciary duties, Stewart after receiving HSA's proposal, unilaterally postponed the meeting with the County and falsely informed HSA that the County was requiring rescheduling of the proposed meeting of the Economic Development Committee. In fact, Stewart was trying to limit HSA's access to the County in order to enable him to attempt to extort an exorbitant sum of compensation, or failing that, to seize for himself the proposed development of the Site being created by HSA.

21.    At the same time as Stewart informed HSA that the meeting with the County was postponed, and pursuant to his scheme, Stewart and Bowles on behalf of New Vision made a demand to HSA for an absurdly huge compensation package for the minimal services that they were providing to the team, including compensation for their 'potential relationship" in the future

- 8 -

with the development project when that future relationship had, in fact, already been defined and agreed upon by the parties, to be limited and subject totally to HSA's discretion. This demand was immediately rejected by HSA.

22.    HSA, based on Stewart's and New Vision's representation that they "would continue to work hard" to deliver the project to the team despite their exorbitant demand for compensation, delivered to Stewart, at HSA's expense, written materials on the proposed development and HSA that Stewart claimed that the County needed to review. Stewart also informed HSA that the meeting with the Economic Development Committee for the County had been rescheduled to January 19, 2008, which again Stewart unilaterally arranged, in breach of his fiduciary duties, and in furtherance of his scheme, to limit HSA's access to the County and give him time to misappropriate from HSA the proposed development if HSA would not meet Stewart and New Vision's extortionate demands for compensation.

23.    Pursuant to Stewart's scheme and in breach of his fiduciary duties to HSA, and without disclosure to HSA and without its authority, Stewart altered the materials transmitted to him by HSA for submission to the County. The alteration falsely represented that New Vision was the lead member of the development team and that New Vision with HSA would secure equity and financing for the project when in fact New Vision was incapable of doing so, which was why New Vision solicited HSA's involvement in the Site from the very beginning of the relationship. This alteration allowed Stewart and New Vision to falsely represent to the County that it lead the development team and intimate that New Vision could develop the project itself, in the event that pursuant to his scheme Stewart caused New Vision to circumvent HSA in developing the Site.

24.    Through late December and early January, HSA inquired of Stewart and Bowles about whether further work was needed in preparation for meeting with the Committee and whether they had any further thoughts on a revised compensation schedule.  No response was forthcoming.

25.    Pursuant to Stewart's scheme, Stewart on or about January 10, 2008, made another outrageous proposal for compensation far beyond industry custom and practice and what was fair in light of Stewart and New Vision's contributions to the project.  Shortly thereafter Stewart sent HSA in Chicago information about Bowles prior legal troubles in an attempt to undermine Bowles or cast doubt with HSA on Bowles' credibility or the possibility that his continued involvement with the development might jeopardize HSA's ability to acquire the Site.

26.    HSA rejected Stewart's proposal but continued working with Bowles to supply him information necessary to respond to the County's Economic Development Committee requests prior to the meeting that had now been rescheduled to January 28, 2008.  HSA also provided Stewart and Bowles with economic proformas for the proposed development to demonstrate why their demand for a compensation package was far beyond reason and custom in the industry and would render the project uneconomical, and again, made another generous and fair proposal for compensation to Stewart and New Vision.

27.    Pursuant to Stewart's scheme and in breach of his fiduciary duties, he did not respond to HSA's request, instead allowing HSA to travel to Milwaukee and make the presentation to the Economic Development Committee of the County on January 29, 2008.  HSA lead the presentation and made it clear to the Committee that it was leading the team, that it was the driving force behind the proposed development and that it would be HSA that would acquire and develop the Site if approved by the County.  Stewart was at the presentation and did not

- 10 -

object to, or dispute HSA's statements as he wanted HSA to continue leading the way to obtain the project's approval, which Stewart and New Vision could not do on their own. Stewart's scheme worked. The Committee unanimously approved the project and recommended adoption by the County's Board of Supervisors, which scheduled February 7, 2008 for a meeting to review the recommendation from the Committee.

28.    In reliance on Stewart's continued silence in breach of his fiduciary duties, HSA, as a result of the Committee's approval continued working on refining the project and securing MATC's participation in the proposed development in negotiation sessions in early February when Stewart did not attend. Bowles participated in assisting HSA to prepare for the February 7th meeting and HSA had a new set of design drawings prepared for the meeting and recruited a potential general contractor to provide cost estimates for the project all of which confidential information was supplied to New Vision.

29.    On February 7, 2008, HSA and Bowles, but not Stewart, attended the County Supervisor's meeting to discover that the project had already been unanimously approved by the County.

30.    Pursuant to Stewart's scheme and in breach of his duties and knowing that the County had approved the project, Stewart and New Vision on February 8, 2008 submitted a new proposal for compensation that was as unreasonable and uneconomic as their prior demands and HSA promptly rejected it and restated the generous proposal it had previously made.

31.    On February 13, 2008, Bowles on behalf of New Vision made a revised proposal to HSA for compensation for New Vision that was much more reasonable and substantially reduced from Stewart and New Vision's prior demands, but Stewart then notified HSA that Bowles did not have any authority to act on New Vision's behalf and Stewart rejected Bowles'

subsequent entreaties to him to drop his demands. Stewart also then reneged on an agreement with Bowles to share any consideration that New Vision earned and then cut Bowles out entirely from the development team or any participation with New Vision in the development.

      32.    As a result of Stewart's misconduct in breach of his fiduciary duties, HSA notified the County of the disagreement between Bowles and Stewart and the failure of Stewart and New Vision to abide by the agreement about their respective roles and economic participation in the development team and that disagreement prevented HSA from proceeding with the development until these issues were resolved.

      33.    On or about February 26, 2008, Stewart notified HSA that he and New Vision would agree with HSA's proposal concerning compensation and asked that a written agreement be forwarded to his attorney, which HSA did.

      34.    Instead of signing the agreement on compensation, Stewart had his attorney reject the proposal and threaten HSA with legal action for communicating with the County, and on March 3, 2008, Stewart, without notice to HSA, wrongfully caused New Vision to enter an option agreement with the County for the Site. Stewart is now soliciting the participation of other real estate development companies to develop the Site with him and New Vision in accordance with the mixed use development created by HSA through its work, contracts and confidential and proprietary information, including architectural plans that HSA paid for which Stewart and New Vision have misappropriated and are now sharing with other development companies.

COUNT I

INJUNCTION

35.    HSA realleges and incorporates by reference paragraphs 1 through 34 inclusive as this paragraph 35.

36.    Pursuant to Stewart and New Vision's scheme to defraud HSA and in breach of their fiduciary duties, they successfully induced HSA to lead a development team to successfully acquire and redevelop the Site.  But for HSA's participation, experience, contacts and months of work and expenditure of funds in developing the mixed use project, including negotiations with MATC and other potential tenants, development of architectural plans and parking plans for the Site, Stewart and New Vision would never have received the required approvals from the County or been awarded the option for the Site.

37.    Stewart and New Vision are now shopping to other developers, the results of HSA's work and expenditure of funds, including confidential and proprietary information developed by HSA for the team such as the components of the mixed use development tailored to MATC's unique needs and the architectural plans and renderings.

38.    HSA has no adequate remedy at law if Stewart and New Vision are not enjoined from pursuing development of the Site using the fruits of HSA's expertise and work and confidential and proprietary information created by HSA for the benefit of a team that Stewart and New Vision intentionally betrayed to personally enrich themselves at the expense of HSA by developing the Site with another participant misappropriating HSA's work to allow them to successfully develop this unique opportunity.

39.    HSA would suffer irreparable harm and it would be unequitable if Stewart and New Vision are not enjoined from successfully executing their scheme to defraud HSA by

- 13 -

misappropriating HSA's creation of a successful mixed use development through months of HSA's work and confidential and proprietary information generated by HSA to allow this unique development to proceed.

WHEREFORE, HSA Commercial, Inc. prays that the Court preliminarily and then permanently enjoin Steven Stewart and New Vision Development Co., LLC from proceeding with the mixed use residential development at Sixth and State Street in Milwaukee, Wisconsin, or in the alternative, enjoining them from proceeding with the development using  directly or indirectly any work or confidential and proprietary information created or developed by HSA Commercial, Inc. and shared with Steven Stewart and New Vision Development Co., LLC and to award HSA Commercial, Inc. such further relief the Court deems equitable and just.

**COUNT II**

**FRAUD**

40.    HSA realleges and incorporates by reference paragraphs 1 through 34 inclusive as this paragraph 40.

41.    Stewart and New Vision's scheme to defraud HSA to induce HSA to successfully lead a development team and through HSA's experience, work and expenditure of funds, time and resources create a viable mixed use real estate project for the Site, which Stewart and New Vision could misappropriate for themselves if HSA did not give in to their extortionate demands for compensation was accomplished by the acts of deception and breaches of fiduciary duties alleged herein, including not disclosing to HSA, when under a duty to disclose, their intent not to abide by the roles and responsibilities of the development team to which Stewart and New Vision had agreed and which induced HSA to lead the development team when, in fact, Stewart

and New Vision intended HSA to lead the development for their personal enrichment at HSA's expense and detriment.

42.     Given Stewart and New Vision's solicitation of HSA to lead the development team and their repeated acquiescence in, and encouragement of, HSA's lead role, both privately in meetings with HSA and in meetings with MATC and the County, HSA reasonably relied on Stewart and New Vision's misrepresentations, agreements and omissions of material facts such as the failure to disclose the scheme itself and their plan to misappropriate the Site if HSA did not give in to their intentionally long delayed demands for extortionate compensation, and HSA proceeded to employ its expertise and expend much time, effort and funds in creating a viable mixed use development for the Site and securing the required approvals.

43.     As a direct and proximate result of Stewart and New Vision's scheme to defraud HSA and the misrepresentations, deceptions and omissions of material fact alleged herein, HSA has been injured in that its work and effort has been misappropriated and it has been fraudulently deprived of the opportunity to develop the project that HSA created for the Site, which once developed would have generated several millions of dollars in net profit for HSA.

44.     Stewart and New Vision conceived and executed their scheme to defraud intentionally to injure HSA and to enrich themselves at the expense of HSA, warranting the award of punitive damages.

WHEREFORE, HSA Commercial, Inc. prays for the entry of judgment, jointly and severally, against Steven Stewart and New Vision Development Co., LLC in an amount in excess of $1 million in actual damages, in an exact amount to be proved at trial and for an award of punitive damages, and such further relief that the Court deems equitable and just.

## COUNT III

## BREACH OF FIDUCIARY DUTIES

45.    HSA realleges and incorporates by reference paragraphs 1 through 34 inclusive as this paragraph 45.

46.    Stewart and New Vision by inducing HSA to participate and lead a development team and agreeing with HSA both in private meetings and in the presence of MATC and the County to HSA's lead role to develop a viable mixed use development for the Site that HSA would acquire, intended to and did create a relationship of trust and confidence between themselves and HSA as members of a team united in a common economic purpose, and as a result Stewart and New Vision stood in a fiduciary relationship with HSA and owed to it fiduciary duties of honesty, loyalty, fairness and full disclosure.

47.    Stewart and New Vision were faithless fiduciaries who through their acts of deception, misrepresentations and omissions of material facts alleged herein repeatedly breached and violated their fiduciary duties to HSA.

48.    HSA did in fact repose trust and confidence in Stewart and New Vision in agreeing to lead the development team and largely through its efforts create a viable mixed use project for the Site for the benefit of all team members.

49.    As a direct and proximate result of Stewart and New Vision's breaches of their fiduciary duties, HSA has been injured by participating as the lead member in a development team and generating a successful and approved development plan for the Site and expending expertise, time and resources creating confidential and proprietary information which Stewart and New Vision have now misappropriated for themselves, as well as being deprived of the receipt of millions of dollars in net profit HSA would have earned from the successful

- 16 -

development of the Site but for Stewart's and New Vision's breaches of fiduciary duties alleged herein.

WHEREFORE, HSA Commercial, Inc. prays for the entry of judgment jointly and severally against Steven Stewart and New Vision Development Co., LLC in an amount in excess of $1 million the exact amount to be determined at trial, and such further relief the Court deems equitable and just.

**COUNT IV**

**UNJUST ENRICHMENT**

50.    HSA realleges and incorporates by reference paragraphs 1 through 34 inclusive as this paragraph 50.

51.    At Stewart and New Vision's solicitation and inducement, HSA agreed to lead the development team for the Site, and with Stewart and New Vision's knowledge and encouragement expended its expertise, contacts, time and resources in creating confidential and proprietary information and creating a successful and approved mixed use project for the Site that HSA can no longer successfully develop as a result of the misconduct of Stewart and New Vision alleged herein.

52.    Stewart and New Vision have now wrongfully misappropriated from HSA the project as well as all of HSA's work and confidential and proprietary information that it generated in creating the project and Stewart and New Vision are using the product of HSA's services to personally enrich themselves at HSA's expense.

53.    It would be unjust and inequitable for Stewart and New Vision to use for their personal benefit the results and work product generated by HSA as the lead member in a

development team and they are obligated to pay to HSA the reasonable value of the services HSA provided.

WHEREFORE, HSA Commercial, Inc. prays for the entry of a judgment jointly and severally, against Steven Stewart and New Vision Development Co., LLC for the reasonable value of the services provided to them by HSA Commercial, Inc. in an amount to be determined at trial, and for such further relief the Court deems equitable and just.

**JURY TRIAL DEMANDED**

**HSA COMMERCIAL, INC.**

By: _____
        One of Its Attorneys

William M. McErlean
Katarzyna K. Dygas
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
(312) 357-1313

CHDS01 WMCERLEAN 454516v1

- 18 -